**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X

JOSHUA LEWIS,

                   Plaintiff,

      -against-

THE CITY OF NEW YORK, a municipal entity;
and NYPD Police Officers JOHN DOES 1-4 and
JANE DOE, in their individual capacities,

                Defendants.

------------------------------------------------------------- X

Case No.

**COMPLAINT**

Jury Trial Demanded

      Plaintiff JOSHUA LEWIS, by and through his attorneys, Hamilton Clarke, LLP, alleges

as follows:

## **PRELIMINARY STATEMENT**

      1.      On October 19, 2022, Joshua Lewis, who is Black, went to the 24th Precinct to

report a crime: that a man had recently attempted to trick his mother into permitting entrance into

their shared home by impersonating an employee of the New York City Housing Authority

("NYCHA").[1] The apartment in which Mr. Lewis and his mother live is in a NYCHA-owned and

operated building.

      2.      Mr. Lewis was troubled by this occurrence because he had heard of other

occasions in which people impersonated government employees to gain access to NYCHA

apartments and rob and assault residents. Mr. Lewis was worried for the safety of his elderly

mother and the other residents of his building.

---

[1] It is a felony to impersonate a government official under both state and federal law. *See* N.Y. Penal Law §§ 190.25-.26; 18 U.S.C. § 912; 25 C.F.R. § 11.432.

3.     Officers from the New York City Police Department ("NYPD") turned Mr. Lewis's mother away when she attempted to report this incident, even though criminal impersonation of government officials is a well-documented problem in NYCHA buildings.[2] As NYCHA officials told Mr. Lewis's family that their only hope of redressing the issue lay with the police, Mr. Lewis sought to file a formal complaint through the proper channels and to enlist the police to help investigate the issue and protect his community.

4.     But Mr. Lewis did not find the help he was seeking in the NYPD. Instead, when Mr. Lewis went to the local precinct, officers refused to take his complaint or explain how Mr. Lewis could file a formal complaint. Indeed, officers refused to let Mr. Lewis enter the precinct. When Mr. Lewis questioned the officers' response, they retaliated and physically attacked Mr. Lewis. Mr. Lewis had done nothing to threaten the officers or provoke their brutal assault and had only verbally complained that they were ignoring his legitimate complaint.

5.     After beating Mr. Lewis until he feared for his life, officers handcuffed and shackled Mr. Lewis for hours, searched his property without lawful authority, and eventually transported him to a hospital for the medical care he so urgently and obviously required. The officers then released Mr. Lewis without pressing any charges.

6.     Mr. Lewis brings this lawsuit to demand accountability—for himself, and for the other members of his community the NYPD systematically ignores and discourages from seeking help from the police.

---

[2] *See, e.g., Police Seek Suspected Thief Posing as Repairman in Bronx*, CBS News New York, July 29, 2021, publicly available at: https://www.cbsnews.com/newyork/news/police-seek-burglary-suspect-who-poses-as-a-repairman/; *Police: Men Posing As NYCHA Workers Rob 2 People at Gunpoint*, CBS News New York, Aug. 1, 2019, publicly available at: https://www.cbsnews.com/newyork/news/ robbers-pose-as-nycha-workers/; *Man Posing as NYCHA Worker Burns 73-Year-Old Man with Hot Knife During Robbery*, Yahoo! Finance, Feb. 28, 2019, publicly available at: https://finance.yahoo.com/video/man-posing-nycha-worker-burns-234903256.html.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

8.      Venue is properly laid in the Southern District of New York, because the acts and omissions described herein occurred in the jurisdiction of the Southern District of New York.

**JURY DEMAND**

9.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which a jury trial is legally available.

**PARTIES**

10.      Plaintiff JOSHUA LEWIS is, and was at all times relevant to this action, a resident of New York County in the State of New York.

11.      Defendant the City of New York (the "City") is a municipal entity created and authorized under the laws of the State of New York. The City is authorized by law to maintain a police department and does maintain the New York City Police Department ("NYPD"). The NYPD acts as the City's agent and the City assumes the risks incidental to the maintenance of a police department and the employment of police officers.

12.      Defendants JOHN DOE 1-4 and JANE DOE (collectively, the "Officer Defendants") were, at all times relevant to this action, employed by the City and acted under color of law in the course and scope of their duties and authority as officers, agents, servants, and employees of the NYPD and the City. They are sued in their individual capacities.

13.      JOHN DOE 1 is a male of African American descent. JOHN DOE 2 is a male of Caucasian descent. JOHN DOE 3 is a male of uncertain descent. JOHN DOE 4 is a male of uncertain descent. JANE DOE is a female of Hispanic, Arabic, or African American descent.

Upon information and belief, each of JOHN DOE 1-4 and JANE DOE were assigned to the 24th Precinct, which is located at at 151 West 100th Street, at all times relevant to this action.

14.     At all relevant times, the Officer Defendants violated Plaintiff's clearly established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Article 1 §§ 1, 6, and 12 of the New York State Constitution, of which reasonable law enforcement officers in their respective circumstances would have known were violations of Plaintiffs' rights.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

15.     On January 3, 2022, Plaintiff served a Notice of Claim upon the City by electronic means, as prescribed by the Office of the New York City Comptroller, within ninety days of the accrual of his claims.

16.     On January 6, 2023, Plaintiff received confirmation that his Notice of Claim was received by the New York City Comptroller's Office and that it was assigned Claim No. 2023PI000380.

17.     On May 24, 2023, Plaintiff's counsel informed the New York City Comptroller's Office that they represented Plaintiff and that Plaintiff was prepared to appear at a G.M.L. § 50-h examination.

18.     Defendant City did not contact counsel to schedule the G.M.L. § 50-h examination.

19.     G.M.L. §§ 50-h(2) and (5) required the City to demand an examination "within ninety days from the date of filing of the notice of claim" and to conduct the examination "within ninety days of service of the demand." Thus, the City failed to comply with G.M.L. § 50-h.

20.     More than thirty days have elapsed since the Notice of Claim was served on the

New York City Comptroller's Office, and the City has neglected or refused to adjust or pay said claims.

21.     This action is filed within one year and ninety days of the events giving rise to Plaintiff's claims.

## FACTS

22.     Mr. Lewis lives with his elderly mother in a building owned by NYCHA in Manhattan Valley.

23.     In late September or early October 2022, a man attempted to gain access to Mr. Lewis's home by impersonating a NYCHA employee.

24.     Mr. Lewis's mother sensed that something suspicious was afoot and did not permit the man entry into the apartment. She promptly reported the incident to NYCHA, which informed her that it could not help her and told her to report the matter to the police.

25.     Following this guidance, Mr. Lewis's mother went to the local NYPD precinct—the 24th Precinct—to report the incident. However, NYPD officers stationed at the 24th Precinct turned her way without permitting her to file a complaint or agreeing to investigate the matter.

26.     Worried for the safety of his mother and the other residents of his building, Mr. Lewis went to the 24th Precinct to make a formal complaint on October 29, 2022.

27.     When he arrived at the precinct, Mr. Lewis encountered two NYPD officers, John Doe 1 and John Doe 2, outside the precinct's entrance.

28.     Mr. Lewis approached the officers and explained that he would like to report a crime and learn how to do so.

29.     The officers told Mr. Lewis that he could not come in the building but did not respond to his queries.

5

30.     Mr. Lewis insisted that the matter was serious and explained the reason he wanted to make a report.

31.     Still, the officers did not meaningfully respond to Mr. Lewis's queries.

32.     Mr. Lewis repeated that he would like to make a complaint and explained, in substance, that the matter was serious and he and his family needed help; and he asked to speak with the precinct's commanding officer.

33.     As Mr. Lewis was speaking, John Doe 1 began donning his gloves, and did not answer when Mr. Lewis asked John Doe 1 why he was putting on his gloves.

34.     Mr. Lewis backed away from the officers, said that he did want trouble but only wanted to report a crime, and showed the officers that he was not carrying a weapon and did not pose the officers any threat.

35.     Mr. Lewis asked for the officers' business cards.

36.     John Doe 1 placed his hand on his firearm, which was holstered on his belt.

37.     Mr. Lewis stated that he was about to reach into his pocket to take out his phone because he wanted to record the incident. He gestured to his front pocket, where the outline of his tight pants clearly revealed a phone.

38.     As Mr. Lewis slowly reached for his pocket, John Doe 2, who had crept up behind Mr. Lewis while Mr. Lewis spoke with John Doe 1, approached Mr. Lewis and grabbed him.

39.     Mr. Lewis posed no threat to the officers and was not doing anything that could be reasonably regarded as threatening.

40.     As John Doe 2 grabbed Mr. Lewis, John Doe 1 rushed forward, kicked and grabbed Mr. Lewis, and body slammed Mr. Lewis into the ground.

6

41.     John Doe 1 and John Doe 2 then grabbed, struck, and pulled at Mr. Lewis's limbs, drove their knees into his back, and ground his body into the pavement.

42.     Mr. Lewis cried out, asking, in substance "What is going on? Why are you doing this?"

43.     Shortly thereafter, additional officers, including John Doe 3, John Doe 4, and Jane Doe raced over.

44.     While Mr. Lewis lay unresisting on the pavement, on or more of the officers grabbed Mr. Lewis's arm and roughly jerked it up and forward, levering his head into the pavement. Mr. Lewis felt pain in his arm and screamed out.

45.     Around the same time, one or more of the officers repeatedly twisted Mr. Lewis's wrist back and forth.

46.     Around the same time, one or more of the officers grabbed Mr. Lewis's ankle and began roughly wrenching it back in forth.

47.     As Mr. Lewis was being assaulted, he began begging for help.

48.     As Mr. Lewis begged, one or more of the officers grabbed the chinstrap on Mr. Lewis' bicycle helmet, which Mr. Lewis was wearing, and began to pull back on it, choking Mr. Lewis.

49.     Mr. Lewis gasped out, in substance, "I can't breathe! I can't breathe!"

50.     None of the officers took steps to intervene or stop the excessive force that their fellow officers used on Mr. Lewis.

51.     Eventually, the officers shackled Mr. Lewis's hands and ankles and hauled him to his feet.

52.     As Mr. Lewis tried to catch his breath, he told the officers that they had hurt his

arm.

53.     The officers asked Mr. Lewis if he required medical attention and Mr. Lewis answered that he did.

54.     Sometime later, an ambulance arrived, and two officers escorted Mr. Lewis in the ambulance to a local hospital.

55.     Mr. Lewis remained restrained throughout the duration of the ambulance ride.

56.     The two officers stayed with Mr. Lewis at the hospital for approximately two hours. Mr. Lewis was kept restrained for this entire time.

57.     Eventually, the two officers removed Mr. Lewis's restraints. The officers did not inform Mr. Lewis that he was free to go, that he was not under arrest, or that he would not be charged. Instead, they simply left him in the hospital.

58.     Mr. Lewis was not charged with any crime.

59.     Upon information and belief, there is no NYPD record of Mr. Lewis being arrested on October 19, 2022.

60.     Mr. Lewis suffered serious physical injuries as a result of Defendants' conduct, including without limitation to his head, torso, shoulders, arms, wrists, hands, legs, and ankles. These injuries caused and continue to cause Mr. Lewis substantial pain and suffering.

61.     Mr. Lewis also suffered, among other things, the loss of his liberty, invasion of his personal safety and integrity, and the violation of his constitutional rights as a result of Defendants' conduct.

62.     These injuries caused Mr. Lewis to experience, and continue to experience, pain and suffering, distress, humiliation, fear, and embarrassment.

**FIRST CAUSE OF ACTION**
**Excessive Force Pursuant to 42 U.S.C. § 1983**
**Against Defendants John Does 1-4 and Jane Doe**

63.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

64.     The Officer Defendants willfully and intentionally subjected Plaintiff to physical force in excess of what was reasonable under the circumstances and caused Plaintiff to suffer physical injuries and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful, or necessary and therefore the individual defendants have violated 42 U.S.C. §1983.

65.     As a direct and proximate result of the foregoing conduct, Plaintiff suffered physical and emotional injuries, mental anguish, economic loss, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

66.     The foregoing conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against the Officer Defendants.

67.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the Officer Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**SECOND CAUSE OF ACTION**
**False Arrest Pursuant to 42 U.S.C. § 1983**
**Against Defendants John Does 1-4 and Jane Doe**

68.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

69.     The Officer Defendants seized, detained, and arrested Plaintiff without probable

cause, and without a reasonable basis to believe such cause existed. These actions violated Plaintiff's rights under the Fourth Amendment of the United States Constitution.

70.     As a direct and proximate result of the foregoing actions, Plaintiff suffered physical and emotional injuries, mental anguish, economic loss, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

71.     The foregoing conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against the Officer Defendants.

72.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the Officer Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**THIRD CAUSE OF ACTION**
**First Amendment Retaliation Pursuant to 42 U.S.C. § 1983**
**Against Defendants John Does 1-2**

73.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

74.     In attempting to make a complaint of suspected criminal activity, and in criticizing John Doe 1 and John Doe 2 for refusing to take said complaint, Plaintiff engaged in a constitutionally protected activity, this protected activity was a substantial or motivating factor in the officers' conduct, and the officers' conduct would chill a person of ordinary firmness from continuing to engage in said conduct.

75.     As a direct and proximate result of the foregoing actions, Plaintiff suffered physical and emotional injuries, mental anguish, economic loss, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

76.     The foregoing conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against John Doe 1 and John Doe 2.

77.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the Officer Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**FOURTH CAUSE OF ACTION**
**Deprivation of Rights Under N.Y.C. Admin. Code § 8-801 *et seq.***
**Against All Defendants**

78.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

79.     Plaintiff and the Officer Defendants are a "person aggrieved" and "covered individuals" within the meaning of N.Y.C. Admin. Code § 8-801, respectively, and Defendant City is the "employer "of the Officer Defendants within the meaning of N.Y.C. Admin. Code § 8-803(b).

80.     The Officer Defendants willfully and intentionally subjected Plaintiff to physical force in excess of what was reasonable under the circumstances and seized, detained, and arrested Plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

81.     As a direct and proximate result of the foregoing actions, Plaintiff suffered physical and emotional injuries, mental anguish, economic loss, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

82.     The foregoing conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against the Officer Defendants.

83.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the Officer Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

### FIFTH CAUSE OF ACTION
**Assault and Battery**
**Against All Defendants**

84.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

85.     The Officer Defendants, acting within the scope and course of their duties as NYPD officers, caused a harmful or offensive contact with Plaintiff, and did touch and strike Plaintiff without legal justification, causing Plaintiff injury and an imminent apprehension of such a contact.

86.     As a direct and proximate result of the foregoing conduct, Plaintiff suffered physical and emotional injuries, mental anguish, economic loss, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

87.     The foregoing conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against the Officer Defendants.

88.     Defendant City is liable for the Officer Defendants' conduct under the doctrine of *respondeat superior*.

89.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the Officer Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## <u>SIXTH CAUSE OF ACTION</u>
### False Imprisonment
### Against All Defendants

90.     Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

91.     The Officer Defendants, acting within the scope and course of their duties as NYPD officers, intentionally restrained Plaintiff's personal liberties by arresting him without reasonable or probable cause to believe a crime has been committed or that Plaintiff had committed that crime.

92.     As a direct and proximate result of the foregoing conduct, Plaintiff suffered physical and emotional injuries, physical injuries, mental anguish, economic loss, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

93.     The foregoing conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against the Officer Defendants.

94.     Defendant City is liable for the Officer Defendants' conduct under the doctrine of *respondeat superior*.

95.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the Officer Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury;

(B)    punitive damages against the individual Defendants in an amount to be determined by a jury;

(C)    reasonable attorney's fees and the costs and disbursements of this action;

(D)    interest; and

(E)    such other and further relief as appears just and proper.

Dated: January 17, 2024
       New York, New York

By:    _____/s/_____

Joshua S. Moskovitz
Adam Strychaluk
Hamilton Clarke, LLP
48 Wall Street, Suite 1100
New York, New York 10005
(212) 729-0952

*Attorneys for Plaintiff*

14